# EXHIBIT "A"

# Confirmed Original Note



Confirmed Note by: FRANKIE BROWN

SEE "PREPAYMENT PENALTY ADDENDUM NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: ▮▮▮▮▮▮

# ADJUSTABLE RATE NOTE
## 5 Year Fixed Rate Payment Option



MIN: ▮▮▮▮▮▮
MERS Phone: 1-888-679-6377

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

| JANUARY 18, 2007 | Nazareth | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

ORIGINAL

100 BEACH PLACE, SHOHOLA, PA 18458
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   220,000.00   (this amount, including any increase to this amount under the terms of this Note, is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided in this Note, but can never exceed the maximum amount specified in Section 3(F) of this Note. Lender is FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
.

I will make all payments under this Note in the form of cash, check, or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of        7.375        %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of       FEBRUARY, 2012     , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

### (C) Interest Rate Limit

My interest rate will never be greater than      9.950      %.

### (D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields in actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER          percentage point(s) (       2.250        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

Initials: _mc_

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on MARCH, 2007 . Each of these dates is called a "Payment Due Date". I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 NORTH WILMOT ROAD, TUCSON, AZ 85711
or at a different place if required by the Note Holder.

### (B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $ 869.27 , until a new Minimum Payment is required as provided below. If my Minimum Payment is not sufficient to cover the interest due under this Note, the difference will be added to my Principal amount as provided in Section 3(E) below.My initial Minimum Payment may not be sufficient to cover the interest due.

### (C) Payment Change Dates

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of MARCH, 2012 , and on that day every 12th month thereafter through my 109th Payment Due Date. Beginning with my 121st Payment Due Date, my Minimum Payment may change monthly thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." For the Payment Change Dates occurring on the 61st, 73rd, 85th, 97th, and 109th Payment Due Dates, the Note Holder also will multiply the amount of my last Minimum Payment due before the Payment Change Date by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) below requires me to pay a different amount, the amount of my new Minimum Payment that will be effective on each of the 61st, 73rd, 85th, 97th, and 109th Payment Change Dates will be the lesser of the Full Payment or the Limited Payment. The amount of my new Minimum Payment that will be effective on each of the Payment Change Dates beginning with the 121st Payment Due Date and continuing monthly thereafter will be the Full Payment, as provided in Section 3(G) below.

The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument (as defined in Section 11 of this Note, below).

### (E) Additions to My Unpaid Principal

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount. In that event and unless Section 3(G) requires me to pay a different amount, on the Payment Due Date that my paying my monthly payment would cause me to exceed that limit and continuing each monthly Payment Due Date thereafter through the 120th Payment Due Date, I will instead pay a new monthly

payment in an amount not less than the amount that would pay the interest portion of the monthly payment at the interest rate effective during the month preceding the applicable Payment Due Date. This amount will be my new Minimum Payment. This means that my Minimum Payment may change monthly. This method of calculating my new Minimum Payment amount will remain in effect until the 121st Payment Due Date.

(G) Required Full Payment

Beginning on the Payment Change Date that occurs on the 121st Payment Due Date and continuing monthly thereafter, I will pay the Full Payment as my Minimum Payment until my payment changes again.

(H) Payment Options

Each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are equal to or greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    (i)    **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option. This payment option will not be available beginning with the 121st Payment Due Date.

    (ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

    (iii)    **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

Payment Options will only be available if they are equal to or greater than the Minimum Payment.

(I) Failure to Make Adjustments

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

4.    NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Initials: _mc_

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received at least the full amount of any Minimum Payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue Minimum Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay at least the full amount of each Minimum Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
ALFRED G. CHAMPY                 -Borrower  MIRIAM CHAMPY                  -Borrower

_____ (Seal)  _____ (Seal)
                                 -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                                 -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                                 -Borrower                                -Borrower

ORIGINAL                                 *[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF RESIDENTIAL FUNDING COMPANY, LLC
FIRST MAGNUS FINANCIAL CORPORATION.
an Arizona Corporation

BY:
Lynette Rivera, Post Closing Reviewer

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

BY
Judy Faber, Vice President

# PREPAYMENT PENALTY ADDENDUM TO NOTE

LOAN NO.: ▓▓▓▓▓▓▓

MIN: ▓▓▓▓▓▓▓
MERS Phone: 1-888-679-6377

This "PREPAYMENT PENALTY ADDENDUM TO NOTE" (hereinafter "Addendum") is made this __18th__ day of __JANUARY, 2007__ , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") of same date made by the undersigned (the "Borrower") to FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender") which is secured by a Deed Of Trust or Mortgage ("Security Instrument") on real property located at:

100 BEACH PLACE, SHOHOLA, PA 18458
*[Property Address]*

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree that the paragraph entitled either "Borrower's Right To Prepay" or "Borrower's Payments Before They Are Due", whichever is applicable, is replaced with the following new section:

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full Prepayment at any time. However, if within the first     THIRTY SIX ( 36 ) months after the execution of this mortgage, I make any prepayment(s) within any 12-month period the total amount of which exceeds     TWENTY     percent ( 20.00  %) of the original Principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of     SIX ( 6 ) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds     TWENTY     percent ( 20.00  %) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Penalty Addendum To Note.

_____
ALFRED G. CHAMPY                    Borrower

_____
Date   1/15/07

_____
MIRIAM CHAMPY                       Borrower

_____
Date   1/15/07

_____
Borrower

_____
Date

_____
Borrower

_____
Date

LENDER SUPPORT SYSTEMS INC. PRE-PA.PRE (05/05)

# EXHIBIT "B"

I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Pike County, Pennsylvania



*Lynn A Murcko*

Lynn A. Murcko
Recorder of Deeds

200700001478
Filed for Record in
PIKE COUNTY, PA
LYNN A MURCKO
01-25-2007 At 01:07 pm.
MORTGAGE    129.50
OR Book 2216 Page   396 - 421

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

Return To:
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT
TUCSON, AZ 85711

Parcel Number: 12-0-004618
Premises: 100 BEACH PLACE, SHOHOLA, PA 18458

Record and Return to
Willow Settlement Services
15 South Main Street
Nazareth, PA 18064

───────────── [Space Above This Line For Recording Data] ─────────────

# MORTGAGE

LOAN NO.: ▮▮▮▮▮▮

MIN ▮▮▮▮▮▮▮▮▮▮
MERS Phone: 1-888-679-6377

## Parcel # ▮▮▮▮▮▮▮▮

DEFINITIONS ▮▮▮▮▮▮▮

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated     JANUARY 18, 2007    ,
together with all Riders to this document.
(B) "Borrower" is
ALFRED G. CHAMPY AND MIRIAM CHAMPY HUSBAND AND WIFE

**Willow Settlement Services # 16184.**

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

Initials:

Case 5:19-bk-04802-RNO   Doc 10-1   Filed 12/09/19   Entered 12/09/19 10:33:58   Desc
Exhibit   Page 11 of 51

(D) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a CORPORATION
organized and existing under the laws of   ARIZONA
Lender's address is
603 NORTH WILMOT ROAD, TUCSON, AZ 85711
(E) "Note" means the promissory note signed by Borrower and dated        JANUARY 18, 2007
The Note states that Borrower owes Lender
TWO HUNDRED TWENTY THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X
                                                                          Dollars
(U.S. $ 220,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than      FEBRUARY 01, 2037              .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider      [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] Graduated Payment Rider     [XX] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider               [ ] Rate Improvement Rider     [ ] Second Home Rider
[ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

Initials: _me_

V-6A(PA) (0508).01                        Page 2 of 16                        Form 3039  1/01

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the    COUNTY
[Type of Recording Jurisdiction] of      PIKE      [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF ......AND BEING MORE
PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of      100 BEACH PLACE      [Street]

     SHOHOLA      [City] , Pennsylvania    18458    [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: _____

COMMITMENT
SCHEDULE C

File Number: WS1684                                  Commitment Number: WS1684

## PARCEL I

ALL THAT CERTAIN lot or parcel of land situate in the Township of Shohola, County of Pike and Commonwealth of Pennsylvania, Being Lot 9, Block 5, Stage 1, as shown on a map or plan of Sagamore Estates on file in the Recorder of Deeds Office at Milford, Pike County, Pennsylvania, in Plat Book Volume 33, Page 156.

BEING the same premises which the Pike County Tax Claim Bureau by indenture bearing the 15th day of November, 1999, and being recorded at Milford, Pennsylvania in the Office for the Recording of Deeds, in and for the County of Pike, in Deed Book Volume 1822 Page 183, granted and conveyed unto Roald Miller and Joan Miller, his wife.

## PARCEL II

ALL THAT CERTAIN lot, piece or parcel of land situate in the Township of Shohola, County of Pike, Commonwealth of Pennsylvania, more particularly described as follows, to wit: Being Lot Number 10, Block Number 5, Stage 1, as shown on a map of Sagamore Estates dated November 15, 1965 and recorded in the Office of the Recorder of Deeds in and for Pike County, PA in Plat Book Number 4, Page 221, and reference may be had to the said map or the recording thereof for a more, full and complete description of the lot or lots herein conveyed:

BEING THE SAME PREMISES which Joan Miller, widow, by deed dated July 23, 2004 and recorded July 26, 2004 in the Office of the Recorder of Deeds in and for Pike County at Easton, Pennsylvania in Deed Book Volume 2059, Page 2583, did grant and convey unto Alfred Champy and Miriam Champy, in fee.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

Initials: 

V-6A(PA) (0508).01          Page 4 of 16          Form 3039  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Initials: _____

V-6A(PA) (0508).01              Page 5 of 16              Form 3039  1/01

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials: _MC_

V-6A(PA) (0508).01                    Page 6 of 16                    Form 3039   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials:

V-6A(PA) (0508).01                Page 7 of 16                Form 3039  1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: *MC*

V-6A(PA) (0508).01                    Page 8 of 16                    Form 3039  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _VM_

Case 5:19-bk-04802-RNO  Doc 10-1  Filed 12/09/19  Entered 12/09/19 10:33:58  Desc
Exhibit    Page 20 of 51

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial .taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in·which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

Initials: _MC_

V-6A(PA) (0508).01    Page 10 of 16    Form 3039  1/01

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to

Initials: _____

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

Initials: _MC_

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: _VLC_

V-6A(PA) (0508).01                          Page 13 of 16                          Form 3039   1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials: _____

# PLANNED UNIT DEVELOPMENT RIDER

LOAN NO.: ▮▮▮▮▮▮

MIN: ▮▮▮▮▮
MERS Phone: 1-888-679-6377

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        18th        day of JANUARY, 2007   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

100 BEACH PLACE, SHOHOLA, PA  18458
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS.

(the "Declaration"). The Property is a part of a planned unit development known as
SAGAMORE ESTATES

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

Initials: _____

MULTISTATE PUD RIDER - Single Family -  Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
V-7R (0411).01                           Page 1 of 3                  LENDER SUPPORT SYSTEMS INC. 7R.NEW (07/06)

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become

Initials: _____

V-7R (0411).01                    Page 2 of 3                    Form 3150 1/01

additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____(Seal)          _____(Seal)
ALFRED G. CHAMPY            -Borrower          MIRIAM CHAMPY              -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                                     -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                                     -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                                     -Borrower

V-7R (0411).01              Page 3 of 3              Form 3150 1/01

# ADJUSTABLE RATE RIDER
## 5 Year Fixed Rate Payment Option

LOAN NO.: ███████

MIN: ███████
MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this 18th day of JANUARY, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

100 BEACH PLACE, SHOHOLA, PA  18458
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.  THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE.  THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS:  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 7.375 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of FEBRUARY, 2012 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

(C) Interest Rate Limit

My interest rate will never be greater than 9.950 %.

Initials: _____

### (D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields in actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding      TWO  AND ONE QUARTER      percentage point(s) (    2.250    %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on    MARCH, 2007      . Each of these dates is called a "Payment Due Date." I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under the Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    FEBRUARY 01, 2037  , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION 603 NORTH WILMOT ROAD, TUCSON, AZ  85711
or at a different place if required by the Note Holder.

#### (B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $     869.27      , until a new Minimum Payment is required as provided below.  If my Minimum Payment is not sufficient to cover the interest due under the Note, the difference will be added to my Principal amount as provided in Section 3(E) below.  My initial Minimum Payment may not be sufficient to cover the interest due.

Initials: _mc_

Case 5:19-bk-04802-RNO  Doc 10-1  Filed 12/09/19  Entered 12/09/19 10:33:58  Desc
Exhibit    Page 30 of 51

**(C) Payment Change Dates**

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of     MARCH, 2012     , and on that day every 12th month thereafter through my 109th Payment Due Date. Beginning with my 121st Payment Due Date, my Minimum Payment may change monthly thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." For the Payment Change Dates occurring on the 61st, 73rd, 85th, 97th, and 109th Payment Due Dates, the Note Holder also will multiply the amount of my last Minimum Payment due before the Payment Change Date by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) below requires me to pay a different amount, the amount of my new Minimum Payment that will be effective on each of the 61st, 73rd, 85th, 97th, and 109th Payment Change Dates will be the lesser of the Full Payment or the Limited Payment. The amount of my new Minimum Payment that will be effective on each of the Payment Change Dates beginning with the 121st Payment Due Date and continuing monthly thereafter will be the Full Payment, as provided in Section 3(G) below.

The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount. In that event and unless Section 3(G) requires me to pay a different amount, on the Payment Due Date that my paying my monthly payment would cause me to exceed that limit and continuing each monthly Payment Due Date thereafter through the 120th Payment Due Date, I will instead pay a new monthly payment in an amount not less than the amount that would pay the interest portion of the monthly payment at the interest rate effective during the month preceding the applicable Payment Due

5 YEAR PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER 05/06
Page 3 of 6

Initials: _____

Date.  This amount will be my new Minimum Payment.  This means that my Minimum Payment may change monthly.  This method of calculating my new Minimum Payment amount will remain in effect until the 121st Payment Due Date.

(G) Required Full Payment

Beginning on the Payment Change Date that occurs on the 121st Payment Due Date and continuing monthly thereafter, I will pay the Full Payment as my Minimum Payment until my monthly payment changes again.

(H) Payment Options

Each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are equal to or greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    (i)   Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate.  The Principal balance will not be decreased by this Payment Option.  This payment option will not be available beginning with the 121st Payment Due Date.

    (ii)  Fully Amortized Payment:  the amount necessary to pay the loan off (including all Principal and interest) on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.  This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

    (iii) 15 Year Amortized Payment:  the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments at the interest rate effective during the preceding month.  This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

<u>Payment Options will only be available if they are equal to or greater than the Minimum Payment.</u>

(I) Failure to Make Adjustments

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described herein, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

5 YEAR PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER 05/06

Page 4 of 6

Initials: _____

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _mc_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
ALFRED G. CHAMPY          -Borrower      MIRIAM CHAMPY           -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                              -Borrower

5 YEAR PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER 05/06
Page 6 of 6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



_____ -Witness

_____ -Witness


_____(Seal)       _____(Seal)
ALFRED G. CHAMPY    -Borrower         MIRIAM CHAMPY      -Borrower

_____(Seal)       _____(Seal)
                    -Borrower                            -Borrower

_____(Seal)       _____(Seal)
                    -Borrower                            -Borrower

_____(Seal)       _____(Seal)
                    -Borrower                            -Borrower

Case 5:19-bk-04802-RNO   Doc 10-1   Filed 12/09/19   Entered 12/09/19 10:33:58   Desc
Exhibit   Page 35 of 51

COMMONWEALTH OF PENNSYLVANIA,          *Pike.*          County ss:

On this, the   18th   day of *January 2007.*          , before me, the undersigned officer, personally appeared
ALFRED G. CHAMPY AND MIRIAM CHAMPY

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lee E. Klingaman, Notary Public
Palmer Twp., Northampton County
My Commission Expires Mar. 21, 2009
Member, Pennsylvania Association of Notaries

Title of Officer

**Certificate of Residence**

I,   *Lee E Klingaman.*          , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this   18th   day of *January 2006*          .

Agent of Mortgagee

Initials:

V-6A(PA) (0508).01          Page 16 of 16          Form 3039  1/01

# EXHIBIT "C"

When Recorded Return To:
DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

**Pike, Pennsylvania**
**SELLER'S SERVICING #** ███████ "CHAMPY"

**MIN #:** ██████████ **SIS #:** 1-888-679-6377

Date of Assignment: November 26th, 2019
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS
NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION, ITS
SUCCESSORS AND ASSIGNS
Assignee: DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL
ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES
2007-QH3

I hereby certify the precise address of the within named Assignor is P.O. BOX 2026, FLINT, MI
48501-2026.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E
Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI
48501-2026

Executed By: ALFRED G. CHAMPY AND MIRIAM CHAMPY HUSBAND AND WIFE To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS FINANCIAL
CORPORATION, AN ARIZONA CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 01/18/2007 Recorded: 01/25/2007 in Book/Reel/Liber: 2216 Page/Folio: 396 as
Instrument/Document: 200700001478 In the County of Pike, State of Pennsylvania.
Property Address: 100 BEACH PLACE, SHOHOLA, PA 18458 in the Township of SHOHOLA

I do certify that the precise address of DEUTSCHE BANK TRUST COMPANY AMERICAS, AS
TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED
PASS-THROUGH CERTIFICATES, SERIES 2007-QH3 is 1761 E. ST. ANDREW PLACE, SANTA ANA,
CA 92705-4934
Attested By: _____

Tsedale Alemu

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $220,000.00 with interest, secured

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION, ITS SUCCESSORS AND ASSIGNS
On November 26th, 2019

By:_____
TSEDALE ALEMU, Vice-President


STATE OF Texas
COUNTY OF Dallas

On November 26th, 2019, before me, SYLVIA RAMIREZ, a Notary Public in and for Dallas in the State of Texas, personally appeared TSEDALE ALEMU, Vice-President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/07/2023 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

(This area for notarial seal)

# EXHIBIT "D"

| Debtor 1 | **Miriam L. Champy** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION | | |
| Case number | | | |

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☑ Yes. Where is the property?

1.1

**100 Beach Pl**
Street address, if available, or other description

**Shohola**   **PA**   **18458-4441**
City        State   ZIP Code

County

**What is the property?** Check all that apply
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**single family house**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$160,000.00** | **$160,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**.........................................................=>   | **$160,000.00** |

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Case 5:19-bk-04802-RNO   Doc 10-1   Filed 1/09/19   Entered 11/08/19 13:51:15   Desc
Main Document   Page 41 of 51

Exhibit Page 41 of 51

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

■ Yes

| 3.1 | Make: _____ | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
|---|---|---|---|

3.1  Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

2009 Hyundai

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

**Current value of the entire property?**  **Current value of the portion you own?**

$4,500.00        $4,500.00

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................=>

$4,500.00

**Part 3:  Describe Your Personal and  Household Items**

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No

■ Yes.  Describe.....

household furniture        $5,000.00

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

■ No

☐ Yes.  Describe.....

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☐ No

■ Yes.  Describe.....

books        $50.00

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

■ No

☐ Yes.  Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No

☐ Yes.  Describe.....

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes. Describe.....

| | |
|---|---|
| wearing apparel | $500.00 |

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes. Describe.....

| | |
|---|---|
| jewelry | $500.00 |

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☐ No
   ■ Yes. Describe.....

| | |
|---|---|
| dog | $300.00 |

**14. Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ..................................................................................

| |
|---|
| $6,350.00 |

| Part 4: | Describe Your Financial Assets |
|---|---|

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ☐ No
   ■ Yes.................................................................................................

| | |
|---|---|
| cash on hand | $189.00 |

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
   ☐ No
   ■ Yes........................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | Checking Account | checking account (joint) total value $808 | $404.00 |
| 17.2. | Savings Account | Capital One 360 total value $679.79 | $339.90 |
| 17.3. | Checking Account | Wells Fargo total value $3,500 | $1,750.00 |

**18. Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes.................    Institution or issuer name:

**19.  Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

■ No

☐ Yes.  Give specific information about them...................

         Name of entity:                             % of ownership:

**20.  Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No

☐ Yes. Give specific information about them

         Issuer name:

**21.  Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No

■ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| **IRA** | **IRA** | $50,543.00 |

**22.  Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No

☐ Yes. ....................                        Institution name or individual:

**23.  Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No

☐ Yes............       Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes............       Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25.  Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No

☐ Yes.  Give specific information about them...

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No

☐ Yes.  Give specific information about them...

**27.  Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No

☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**28.  Tax refunds owed to you**

■ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29.  Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No

☐ Yes. Give specific information......

Software Copyright (c) 2019 CINGroup - www.cincompass.com

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits;
        unpaid loans you made to someone else
    ■ No
    ☐ Yes. Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ☐ No
    ■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| life insurance, burial policy | | $10,000.00 |

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**......................................................................................................

| | $63,225.90 |
|---|---|

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes.  Go to line 38.

**Part 6:** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes.  Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ...................................

| | $0.00 |
|---|---|

| Part 8: | List the Totals of Each Part of this Form |
|---------|-------------------------------------------|

55.   **Part 1: Total real estate, line 2** ......................................................................................................   $160,000.00

56.   **Part 2: Total vehicles, line 5**                                            $4,500.00

57.   **Part 3: Total personal and household items, line 15**                      $6,350.00

58.   **Part 4: Total financial assets, line 36**                                  $63,225.90

59.   **Part 5: Total business-related property, line 45**                         $0.00

60.   **Part 6: Total farm- and fishing-related property, line 52**                $0.00

61.   **Part 7: Total other property not listed, line 54**                  +      $0.00

62.   **Total personal property.** Add lines 56 through 61...       $74,075.90       Copy personal property total        $74,075.90

63.   **Total of all property on Schedule A/B**. Add line 55 + line 62                                                   $234,075.90

Software Copyright (c) 2019 CINGroup - www.cincompass.com

| | |
|---|---|
| Debtor 1 | **Miriam L. Champy** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

# Official Form 106C
# Schedule C: The Property You Claim as Exempt          4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☒ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own  Copy the value from *Schedule A/B* | Amount of the exemption you claim  *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **2009 Hyundai**  Line from *Schedule A/B* **3.1** | $4,500.00 | ☒ $4,000.00  ☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(2) |
| **2009 Hyundai**  Line from *Schedule A/B* **3.1** | $4,500.00 | ☒ $500.00  ☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **household furniture**  Line from *Schedule A/B* **6.1** | $5,000.00 | ☒ $5,000.00  ☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(3) |
| **books**  Line from *Schedule A/B* **8.1** | $50.00 | ☒ $50.00  ☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(3) |
| **wearing apparel**  Line from *Schedule A/B* **11.1** | $500.00 | ☒ $500.00  ☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(3) |

Software Copyright (c) 2019 CINGroup - www.cincompass.com

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| **jewelry**<br>Line from *Schedule A/B*: **12.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(4) |
| **dog**<br>Line from *Schedule A/B*: **13.1** | $300.00 | ■ $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(3) |
| **cash on hand**<br>Line from *Schedule A/B*: **16.1** | $189.00 | ■ $189.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **cash on hand**<br>Line from *Schedule A/B*: **16.1** | $189.00 | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **checking account (joint) total value $808**<br>Line from *Schedule A/B*: **17.1** | $404.00 | ■ $404.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **Capital One 360 total value $679.79**<br>Line from *Schedule A/B*: **17.2** | $339.90 | ■ $339.90<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **Wells Fargo total value $3,500**<br>Line from *Schedule A/B*: **17.3** | $1,750.00 | ■ $796.10<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **Wells Fargo total value $3,500**<br>Line from *Schedule A/B*: **17.3** | $1,750.00 | ■ $953.90<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| **IRA**<br>Line from *Schedule A/B*: **21.1** | $50,543.00 | ☐<br>■ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(10)(E) |
| **life insurance, burial policy**<br>Line from *Schedule A/B*: **31.1** | $10,000.00 | ☐<br>■ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(7) |

3. **Are you claiming a homestead exemption of more than $170,350?**
(Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

■ No

☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ☐ No

    ☐ Yes

Software Copyright (c) 2019 CINGroup - www.cincompass.com

Fill in this information to identify your case:

Debtor 1    **Miriam L. Champy**

First Name    Middle Name    Last Name

Debtor 2
(Spouse if, filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property    **12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:**    **List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor 's name.

| | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|
| **2.1 Mr. Cooper**<br>Creditor's Name | **$233,707.83** | **$160,000.00** | **$73,707.83** |

Describe the property that secures the claim:

**100 Beach Pl, Shohola, PA 18458-4441**
**single family house**

8950 Cypress Waters Blvd
Coppell, TX 75019-4620

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **First lien mortgage**

Date debt was incurred

Last 4 digits of account number    **1239**

Debtor 1  **Miriam L. Champy**

First Name            Middle Name            Last Name

Case number (if known) _____

| 2.2 | **PNC Bank** | | $2,196.74 | $160,000.00 | $2,196.74 |

Creditor's Name

Describe the property that secures the claim:

**100 Beach Pl, Shohola, PA**
**18458-4441**
**single family house**

**PO Box 6534**
**Carol Stream, IL**
**60197-6534**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

■ At least one of the debtors and another

☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

■ Other (including a right to offset)    **Second lien on residence**

Date debt was incurred _____      Last 4 digits of account number _____

Add the dollar value of your entries in Column A on this page. Write that number here:    | $235,904.57 |

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:    | $235,904.57 |

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 2019 CINGroup - www.cincompass.com

| **Fill in this information to identify your case:** | |
|---|---|
| Debtor 1 | **Miriam L. Champy** |
| | First Name      Middle Name      Last Name |
| Debtor 2 (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7    12/15

If you are an individual filing under chapter 7, you must fill out this form if:

■ creditors have claims secured by your property, or

■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

**Part 1:**   List Your Creditors Who Have Secured Claims

1. For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Mr. Cooper** <br><br> Description of property securing debt: **100 Beach Pl, Shohola, PA 18458-4441** | ■ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☐ Retain the property and enter into a *Reaffirmation Agreement.* <br> ☐ Retain the property and [explain]: | ■ No <br><br> ☐ Yes |
| Creditor's name: **PNC Bank** <br><br> Description of property securing debt: **100 Beach Pl, Shohola, PA 18458-4441** | ■ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☐ Retain the property and enter into a *Reaffirmation Agreement.* <br> ☐ Retain the property and [explain]: | ■ No <br><br> ☐ Yes |

**Part 2:**   List Your Unexpired Personal Property Leases

For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|

Software Copyright (c) 2019 CINGroup - www.cincompass.com